985 F.2d 560
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Robin Rick MANNING, Petitioner-Appellant,
v.
John JABE, Respondent-Appellee.
 No. 92-1424.
 United States Court of Appeals, Sixth Circuit.
 Jan. 26, 1993.
 
 Before DAVID A. NELSON and BOGGS, Circuit Judges, and BERTELSMAN, Chief District Judge.*
 PER CURIAM.
 
 
 1
 In this habeas corpus action under 28 U.S.C. § 2254, Robin Rick Manning challenges his conviction for first degree murder, possession of a firearm during the commission of a felony and carrying a dangerous weapon with unlawful intent. We affirm the district court's decision, denying his petition.
 
 
 2
 * On August 6, 1984, Thomas Newvine and Gilbert Morales had a fight at a late-night party. Newvine won, and Morales left, threatening to return and "blow [Newvine] away." Morales did return, in the company of Manning and William Luna, and shot and killed Newvine.
 
 
 3
 Manning's version of the incident was that he was at Luna's house when Morales called to say he needed backup in a fight. Manning and Luna went to Morales's house to pick him up. Morales, Manning claims, did not come to the car carrying a gun, nor did he say that he was going to shoot anybody. Luna was driving, Manning was in the front passenger seat and Morales was in the back seat as they set off for the party.
 
 
 4
 When the three men got to the party, Morales asked where Newvine was. As Newvine approached the car, Morales grabbed a gun from the back seat. Manning leapt out of the car and into the back seat. He struggled with Morales for a few moments and was able to wrest the gun from him. Manning got back into the front seat. Morales then hit Manning and, after a short struggle, recaptured the gun. Luna started to drive, and they went past Newvine. Morales stuck the gun out of the car window and shot Newvine. Manning contends that, although he was present at the killing, he had not known that Morales intended to shoot Newvine. He believed that Morales shot at the ground, but Newvine threw himself in the path of the bullets.
 
 
 5
 Manning and Luna were tried together in state court. On the fifth day of trial, Luna pled guilty to second degree murder. He also agreed to testify against Manning. Manning moved for a mistrial, which was denied.
 
 
 6
 On March 21, 1985, the jury found Manning guilty on all three charges. He was sentenced to life in prison for the murder, two years for the felony firearm charge and three to five years for carrying a dangerous weapon.
 
 II
 
 7
 * Manning's first assignment of error is that he was denied due process because he was not granted a mistrial either after Luna pled guilty or after the facts of Luna's plea agreement were admitted during Luna's testimony.
 
 
 8
 In most circumstances, prosecutors may not tell the jury that a defendant's co-conspirator pled guilty. United States v. Griffin, 778 F.2d 707, 710 (11th Cir.1985). Manning is correct that one defendant's guilty plea cannot be used against a different defendant because it is unfairly prejudicial; each person must be judged only on the evidence against him and not on the decisions or behavior of alleged co-conspirators. But here, the trial court was scrupulously careful in instructing the jury that it should not infer Manning's guilt or innocence from Luna's plea.
 
 
 9
 Furthermore, there are two exceptions to the prohibition on prosecutorial mention of co-defendants' or co-conspirators' guilty pleas. One is in the case of a joint trial where one or more co-defendants disappear from counsel table. United States v. Baez, 703 F.2d 453, 455 (10th Cir.1983). The second exception is the situation in which the co-defendant takes the witness stand, and details of the plea agreement can be introduced to allow the jury to assess the witness's credibility. Ibid. The second instance is particularly apposite here. The fact that Luna pled guilty during trial allowed the defense to try to use his plea agreement to impeach him. The fact that the defense strategy was wholly unsuccessful does not generate a due process claim.
 
 
 10
 Luna's change of status from defendant to witness is a red herring. The judge, in order to explain Luna's absence from counsel table, told the jury that Luna had pled guilty to second degree murder. Manning had the opportunity to use the plea bargain in cross-examining Luna to impugn his credibility. Furthermore, because Luna could testify at any subsequent trial, Manning's assignment of error, if error there was, is wholly harmless.
 
 B
 
 11
 Manning's second assignment of error is that he and Luna were misjoined at trial because they had antagonistic defenses. The claim is simply wrong. For defenses to be antagonistic under the law so that separate trials are required, the defendants must present mutually contradictory theories of the case. Joinder can also be improper when it affects a defendant's ability to call witnesses or otherwise present evidence. No such claim or showing was made here.
 
 
 12
 Both Luna and Manning claim that they did not realize Morales intended to kill Newvine. And both Luna and Manning agree that Morales was the shooter. The fundamental difference between the two is that Luna claimed Manning was holding a weapon, and Manning denies it. That difference is not sufficient to compel severance on review, absent some showing of prejudice.
 
 C
 
 13
 Manning makes several other claims in his habeas petition including: that the trial court erred in finding sufficient evidence at the preliminary hearing and at trial for an instruction on first degree murder; that the jury instructions were so defective as to constitute reversible error; that it was double jeopardy for the jury to convict on both the offense of carrying a concealed weapon with unlawful intent and felony firearm, when it was based on possession of only one firearm; and that Manning's statement to the police was involuntary and therefore inadmissible. After considering each one in turn, we find no merit in any of his contentions.
 
 
 14
 Because there was no reversible error in the proceedings below, we AFFIRM.
 
 
 
 *
 William O. Bertelsman, Chief United States District Judge for the Eastern District of Kentucky, sitting by designation